UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERIC M. CUNNINGHAM, SR., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:12-CV-785 (CEJ) |
| EDDIE HINRICHS, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the joint motion of defendants Eddie Hinrichs, Frank Chaitman, and the City of Clayton, Missouri for summary judgment. Plaintiff opposes the motion, and the issues are fully briefed.

I. **Background**

On August 15, 2011, at approximately 1:30 p.m., eleven Clayton police officers including defendants Hinrichs and Chaitman, responded to a reported burglary in progress at a residence on South Bemiston Avenue. Plaintiff, Eric Cunningham, Sr., worked as a handyman for several residents of that neighborhood, and on the afternoon of August 15, he was working in the backyard of a residence two houses away from the location of the reported burglary. As plaintiff walked along the side of the house toward the front yard, he observed multiple police cars blocking the street. Hinrichs, who was positioned on the perimeter of the circle that the officers had formed around the scene, noticed plaintiff and identified him as a possible suspect.

The parties disagree about the events that followed. According to plaintiff, Hinrichs pointed a gun directly at his face and told him to put his hands in the air. Plaintiff raised his hands and tried to ask what was going on, but was told to "shut up." Hinrichs told plaintiff to get on the ground. While plaintiff was attempting to comply,

Hinrichs pushed plaintiff to the ground and sat on him. Chaitman came to assist Hinrichs, and together the officers pulled plaintiff's arms behind his back and handcuffed him. Plaintiff told the officers he could not breathe, and he was again told to "shut up."

Hinrichs testified in his deposition that he approached plaintiff with his service pistol in the "low ready" position, meaning that he was holding it low in front of himself and between his legs. He ordered plaintiff to stop, but plaintiff turned and walked away from him. He again ordered plaintiff to stop and get on the ground. Plaintiff asked "why," and continued to walk away. Hinrichs repeated his commands, and plaintiff still did not comply. Eventually, plaintiff dropped to his knees. Hinrichs told plaintiff to lie on his stomach with his arms to his sides. Plaintiff asked why and the officer said he would explain later. Plaintiff lay on his stomach, but then tried to get up.

Chaitman testified that when he arrived on the scene, he noticed Hinrichs and plaintiff arguing in the front yard of an address near the location of the reported burglary. Chaitman heard Hinrichs yell for plaintiff to stop and saw plaintiff walk away. By the time Chaitman joined Hinrichs, plaintiff was face-down on the grass, with his arms tucked under his stomach, refusing Hinrichs's commands to put his arms behind his back and attempting to get up. Hinrichs used his leg to hold plaintiff to the ground, and both defendants pulled plaintiff's arms behind his back and handcuffed him. Plaintiff was then given the opportunity to explain his employment, which was confirmed by a resident of the neighborhood. The handcuffs were removed. Plaintiff was visibly upset and complained of pain and shortness of breath. An ambulance arrived and plaintiff was offered medical attention, which he refused. The following

day, plaintiff visited his family doctor, complaining of shoulder pain. Plaintiff claims that he still suffers from shoulder pain, distress, and anxiety.

Plaintiff brings federal and state law claims for damages against defendants Hinrichs, Chaitman, and the City of Clayton. Plaintiff claims that the officers' conduct violated the Fourth Amendment (Counts I and II) and the Equal Protection Clause (Count III), and that the City of Clayton liable for the violations of his constitutional rights (Counts IV and V). Plaintiff also brings state law claims of assault and battery, and false arrest and imprisonment against the officers and the City (Counts VI-VIII). Defendants move for summary judgment on all counts.

## II. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III.  Discussion

#### A.  Fourth Amendment Claims

Plaintiff brings claims under 42 U.S.C. § 1983, alleging violations of his Fourth Amendment rights. Plaintiff contends that the officer defendants lacked probable cause to arrest and detain him, and that they used excessive force during the course of that arrest. Defendants argue that they did not arrest plaintiff, but rather performed a brief investigatory stop using a reasonable degree of force. Defendants also assert that they are entitled to qualified immunity.

##### 1.  Unlawful Seizure (Count II)

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. In order to comport with the requirements of the Fourth Amendment, an investigatory stop - or a Terry stop - must be justified by "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)); see also United States v. Morgan, No. 12-4043, 2013 WL 4798896, at *2 (8th Cir. Sept. 10, 2013). An arrest, on the other hand, must be supported by probable cause. See, e.g., Devenpeck v. Alford, 543 U.S. 146, 152 (2004). A Terry stop may be transformed into an arrest if "the officers' conduct is more intrusive than necessary for an investigative stop."

United States v. Bloomfield, 40 F.3d 910, 916-17 (8th Cir. 1994) (quoting United States v. Jones, 759 F.2d 633, 636 (8th Cir. 1985)).

In this case, factual disputes prevent the Court from determining whether the encounter between the plaintiff and the officers constituted an investigatory stop or an arrest. Plaintiff and defendants espouse two strikingly different accounts of the events of August 15, 2011. Plaintiff claims that he was approached by an officer pointing a gun at his face, and was thrown down, pinned to the ground, and forcibly handcuffed. Plaintiff also insists that he obeyed the officers' orders, did not attempt to retreat, flee, or resist, and did nothing to raise suspicion. According to defendants, Officer Hinrichs approached plaintiff with his gun in the "low ready" position, and plaintiff took steps away from the officer and ignored commands to stop. Defendants also claim that plaintiff was not physically forced to the ground. The Court cannot decide whether the officers' conduct was "more intrusive than necessary," when the content and nature of that conduct, and the conduct of the plaintiff, are in dispute. The disagreement regarding the actions of the officers and the plaintiff must be resolved by the finder of fact, not by this Court on a motion for summary judgment.

2.  Use of Excessive Force (Count I)

A claim that law enforcement officers used excessive force to seize an individual is analyzed under the Fourth Amendment and its objective reasonableness standard. See Graham v. Connor, 490 U.S. 386, 395 (1989) (establishing that the Fourth Amendment standard applies to such claims); see also McCoy v. City of Monticello, 342 F.3d 842, 847-48 (8th Cir. 2003). The reasonableness of the officers' actions must be evaluated "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. The Court

should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Id. at 396-97.

The factual disputes precluding summary judgment on plaintiff's claim of unreasonable seizure likewise prevent the Court from granting summary judgment on plaintiff's claim of excessive use of force. The extent of force used against plaintiff and plaintiff's conduct and demeanor toward the officers remain in question. Therefore, the Court cannot determine whether the force used by the officers was objectively reasonable as a matter of law, and defendants' motion for summary judgment on this count will be denied. See, e.g., McDowell v. Blankenship, No. 4:08-CV-602 (SNLJ), 2012 WL 3095520, at *8 (E.D. Mo. July 30, 2012) (denying summary judgment on an excessive use of force claim due to dispute about whether the plaintiff resisted arrest); Blair v. Brown, No. 4:10-CV-1973 (JCH), 2011 WL 6715888, at *6 (E.D. Mo. Dec. 21, 2011) (denying summary judgment on an excessive use of force claim because the parties "have drastically different accounts of Plaintiff's arrest"); Kukla v. Hulm, 310 F.3d 1046, 1050 (8th Cir. 2002) (affirming the denial of summary judgment due to a genuine issue of whether force used was excessive).

3.  **Qualified Immunity**

"Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the

circumstances [he] confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (citing Saucier v. Katz, 533 U.S. 194, 206 (2001)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Courts employ a two-part inquiry to determine whether officials are protected by qualified immunity. First, the court must decide "whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Second, the court must determine "whether that right was clearly established at the time of the defendant's alleged misconduct." Id. To be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. (internal citation omitted). If the court finds that the right was not clearly established at the time of the incident, then the officials are entitled to qualified immunity.

As discussed above, factual disputes prevent this Court from determining whether the officers violated plaintiff's rights under the Fourth Amendment. However, the facts as shown by plaintiff---that plaintiff was fully cooperative, clearly unarmed, and neither fled nor resisted, and that the officers pointed a gun at him, pushed and held him to the ground, and forcibly handcuffed him---do make out a violation of plaintiff's rights to be free from unreasonable seizure and the use of excessive force.

Moreover, at the time of plaintiff's seizure, the law was clearly established that the use of physical force and handcuffs against a nonthreatening individual, who neither resists nor attempts to flee, would be unreasonable, excessive, and more intrusive than necessary. Shannon v. Koehler, 616 F.3d 855, 863-64 (8th Cir. 2010) (affirming a district court's denial of qualified immunity and finding "clearly established" that "the use of force against a suspect who was not threatening and not resisting may be unlawful"). Reasonable officers in defendants' positions would have known that the force used was more intrusive than necessary (transforming the Terry stop into an arrest) and excessive in violation of the Fourth Amendment. Accordingly, the officer defendants are not entitled to qualified immunity on plaintiff's claims under the Fourth Amendment.

### B.  Equal Protection (Count III)

Plaintiff claims that the officer defendants targeted him for differential treatment because of his race, in violation of the Equal Protection Clause of the Fourteenth Amendment. He asserts that the officers singled him out for arrest, and used excessive force against him, because he is African-American. The officers argue that there is no evidence to support this claim.

The Equal Protection Clause requires state actors to treat similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Habhab v. Hon, 536 F.3d 963, 967 (8th Cir. 2008). "State actors may, however, treat dissimilarly situated people dissimilarly without running afoul of the protections afforded by the clause." Habhab, 536 F.3d at 967 (quoting Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000)). To survive summary judgment, plaintiff must show some evidence that the officers' conduct had a discriminatory effect and that the

officers were motivated by a discriminatory purpose. United States v. Bell, 86 F.3d 820, 823 (8th Cir. 1996).

Plaintiff contends that he was treated differently from the individuals in the neighborhood who gathered to observe the police activity. It is undisputed that there were people standing in their yards watching the police activity, and that none of these onlookers were treated the way plaintiff was treated. See Officer Fink Dep. [Doc. #31-3, pp. 31-32]; Lieutenant Bass Dep. [Doc. #31-4, p. 52]. Diane Denny, a Caucasian resident of the neighborhood, emerged from the front door of her home and approached the police officers to ask what was going on. However, Denny and the other onlookers were not similarly situated to plaintiff. They emerged from their homes, and stood in their lawns or the street to watch the police work. They were not walking between homes and disregarding the police presence, as plaintiff was. Because these individuals were not similarly situated to plaintiff, the defendants' treatment of them does not support plaintiff's equal protection claim. Johnson v. Crooks, 326 F.3d 995, 1000 (8th Cir. 2003) ("When the claim is selective enforcement of the traffic laws or a racially-motivated arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose.").

Plaintiff has likewise failed to produce evidence to support an inference of discriminatory purpose. There is no evidence that the officers harbored any racial animus towards African-Americans. The officers did not make any remarks during the course of the incident from which racial animus could be inferred.[1] Hinrichs' statement

---

[1] See Cunningham Dep. [Doc. #31-1, pp.60-61]:
Q: Did any officer say anything that was racially oriented to you?
A: No.
Q: Refer to you as being a black man?

that he stopped plaintiff because he was "looking for anything out of the ordinary… and [plaintiff] was the first person I saw" is of no aid to plaintiff. [Doc. #31-5, p. 6]. There is simply nothing in the record to suggest that by "anything out of the ordinary," Hinrichs meant a person of a race other than Caucasian. Lieutenant Bass' remark that it was a "possibility" that the word "anything" could include Hinrichs' targeting plaintiff due to his race is entirely speculative and without probative value. See Lieutenant Bass Dep. [Doc. #31-4, pp. 50-51]. Bass quickly clarified that "race, sex, gender or any of that realistically is irrelevant to how Officer Hinrichs responded," that he was not aware that Officer Hinrichs had any "issues with race," and that he did not believe Officer Hinrichs targeted plaintiff based upon his race. Id.

Because plaintiff has "submitted no evidence that Defendant Police Officers held any racial animus towards African-Americans, that they said any remarks where one could infer racial animus, or that they treated [plaintiff] differently than similarly situated people of another race," defendants here are entitled to judgment on this count as a matter of law. Green v. Missouri, 734 F.Supp.2d 814, 841 (E.D. Mo. 2010) (granting summary judgment on equal protection claim for the same reasons).

### C. Municipal Liability (Count IV)

Municipal liability under 42 U.S.C. § 1983 will lie for the unconstitutional acts of a municipality's officials or employees if those acts resulted from an official municipal policy or an unofficial municipal custom. See Atkinson v. City of Mountain View, 709 F.3d 1201, 1214 (8th Cir. 2013) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658,

---

A: No.
Q: Did any officer say anything to you that you were offended by or that you thought was out of line?
A: 'Get down and shut up.'
Q: Other than that?
A: No.

690-91 (1978)). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403-04 (1997). "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Id. The plaintiff must prove that the policy or custom was "the moving force [behind] the constitutional violation." Monell, 436 U.S. at 694.

If the municipality's officials or employees have not engaged in unconstitutional conduct, examination of the municipality's customs and policies becomes irrelevant and municipal liability cannot be established. McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005). Thus, because the plaintiff's equal protection claim against the individual officers will be dismissed, the Court need not consider municipal liability in the context of the dismissed claim.

1. **Official Policy**

An official policy is "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (citing Ware v. Jackson Cnty., 150 F.3d 878, 880 (8th Cir. 1998)). Plaintiff argues that the City has adopted a written policy permitting officers to use a degree of force that violates the Constitution. The policy states that "officers shall use only that level of force which appears reasonably necessary to effectively bring an incident under control, or to protect their lives and/or well-being or that of another." See Def. Ex. E, Policies and Procedures of City of

Clayton [Doc. #21-5; p. 103].  After reviewing that policy, the Court finds that it comports with the constitutional requirement that the force used during a seizure be objectively reasonable under the circumstances.[2]

### 2. Ratification

Plaintiff also suggests that the "ratification" of the officers' conduct constitutes an official policy.  The police department conducted a use of force investigation, and determined that the force used in this case was consistent with the department's policy.  That determination was approved by the Chief of Police.  When an officer's conduct is reviewed and approved by a municipality's authorized policymakers, "their ratification would be chargeable to the municipality because their decision is final." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).  The municipality could be held responsible because "an unconstitutional government policy can be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." Davison v. City of Minneapolis, 490 F.3d 648, 659 (8th Cir. 2007).

"Whether an official had final policymaking authority is a question of state law." Pembaur v. Cincinnati, 475 U.S. 469, 483 (1986).  Plaintiff has not pointed to any evidence that the City's Chief of Police had final policymaking authority.  Indeed, the law and the facts suggest otherwise.  See Copeland v. Locke, 613 F.3d 875, 882 (8th Cir. 2010) (citing Mo. Rev. Stat. § 79.110) (finding that under Missouri law, the Chief of Police does not have final policymaking authority for the municipality of Bella Villa);

---

[2] Plaintiff specifically takes issue with the policy's "Use of Force Continuum," which sets forth an escalating scale of force that may be used depending on the conduct of the suspect. See City's Policy [Doc. #21-5, p. 104].  Plaintiff's interpretation of that document is not supported by any evidence.  Contrary to plaintiff's assertions, the Continuum provides that "verbal non-compliance" should be met vocally, not physically, by the officers.

see also Atkinson v. City of Mountain View, 709 F.3d 1201, 1215 (8th Cir. 2013) (finding that plaintiff could not establish that, under Missouri law, police chief was the final policy maker for the city). Furthermore, even if Clayton's Chief of Police had final policymaking authority, there is no evidence that the Chief's "ratification" was the moving force behind the officer defendants' alleged constitutional violations.

3. Custom

"[T]he Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)). To prove a municipal custom exists, plaintiff must show:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> (3) …that the custom was the moving force behind the constitutional violation.

Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). The Eighth Circuit "has held municipalities liable under Monell when the plaintiffs have produced evidence of prior complaints sufficient to demonstrate that the municipalities and their officials ignored police misconduct." Id. at 1205. "A single incident normally does not suffice to prove the existence of a municipal custom." Id. (citing Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985)).

In this case, plaintiff has failed to provide evidence of prior complaints relating to excessive use of force regarding the officer defendants, or any other officers in the

-13-

Clayton police department, that might be viewed together as a record of a pervasive pattern of unconstitutional behavior. Instead, plaintiff relies on the depositions of other officers on the scene responding to the August 15 reported burglary. These officers testified that defendants' use of force was justified under the circumstances - but they also believed the defendants' account of the events, not plaintiff's. The fact that these officers understood some use of force to be permissible when an unidentified individual in the immediate vicinity of a reported ongoing felony is being uncooperative, disobedient, and either retreating from, or advancing on, the officer does not show a pattern of unconstitutional misconduct.

In conclusion, plaintiff has failed to show the existence of any municipal policy, custom, or usage that was the moving force behind the officer defendants' alleged unconstitutional use of force. Accordingly, the City is entitled to summary judgment on plaintiff's Monell claim.

### D. Respondeat Superior Liability (Count V)

Respondeat superior is not a basis for municipality liability. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) ("[W]e conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Plaintiff contends that this rule should be modified based on a dissenting opinion in Oklahoma City v. Tuttle, 471 U.S. 808 (1985). However, the Court is bound by the current law, and declines plaintiff's invitation to depart from it. See Hendricks v. City of Bella Villa, No. 4:08-CV-1836 (CEJ), 2010 WL 3024102, at *7 (E.D. Mo. Aug. 2, 2010) (rejecting the same argument).

### E. Missouri State Law Claims

### 1. Assault and Battery (Count VI)

Under Missouri law, a police officer may be liable for assault and battery only when the officer used more force than was reasonably necessary. See Neal v. Helbling, 726 S.W.2d 483, 487 (Mo. Ct. App. 1987). Defendants argue that they used only necessary force against plaintiff. However, as discussed previously in the context of the Fourth Amendment, factual disputes prevent the Court from determining whether the degree of force used by the officers was necessary.

Defendants also argue that they are entitled to official immunity. "Under Missouri law, 'the doctrine of official immunity shields public officers and state officials from civil liability for injuries arising out of their discretionary acts, functions, or omissions performed in the exercise of their official duties.'" Hawkins v. Holloway, 316 F.3d 777, 788-89 (8th Cir. 2003) (quoting Harris v. Munoz, 43 S.W.3d 384, 387 (Mo. Ct. App. 2001)). However, official immunity does not apply to discretionary acts done in bad faith or with malice. State ex rel. Tweihaus v. Adolf, 706 S.W.2d 443, 446 (Mo. 1986) (*en banc*). Plaintiff argues that defendants acted with bad faith and malice, and therefore should be denied official immunity.

Under Missouri law, "[a] defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Twiehaus, 706 S.W.2d at 447 (citation and quotations omitted). Bad faith requires "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Id. (citation and quotations omitted). As explained in the Court's discussion of qualified immunity, defendants may have intentionally committed acts that they had reason to believe were prohibited. A jury

could find that defendants acted in bad faith and with malice by knowingly seizing plaintiff using unnecessary force, in violation of plaintiff's clear Constitutional rights. Taylor ex rel. Taylor v. Isom, No. 4:11-CV-1351 (CAS), 2013 WL 1867106, at *9 (E.D. Mo. May 2, 2013) (denying official immunity because "[a] police officer would know that arresting a person without probable cause is contrary to his duty" and "[m]alice, in the official immunity context, means intentionally committing an act that the official has reason to believe is legally prohibited."). "Whether or not an officer acted willfully or maliciously is usually a question of fact to be resolved by the jury." Craighead v. Lee, 399 F.3d 954, 963 (8th Cir. 2005). In this case, questions of fact remain, and summary judgment must be denied.

### 2. False Arrest and Imprisonment (Count VII)

False arrest and false imprisonment occur when there is "confinement without legal justification." Kurtz v. City of Shrewsbury, 245 F.3d 753, 757 (8th Cir. 2001) (citing Desai v. SSM Health Care, 865 S.W.2d 833, 836 (Mo. Ct. App. 1993)); see also Highfill v. Hale, 186 S.W.3d 277, 280 (Mo. 2006). Whether the seizure of plaintiff was legally justified remains an open issue, and, as discussed above, the Court cannot grant summary judgment on the basis of official immunity when a jury could find that defendants acted maliciously and in bad faith. See Shell v. Ebker, No. 4:04-CV-1917 (CAS), 2006 WL 1026982, at *11 (E.D. Mo. Apr. 14, 2006) (denying summary judgment on claim of false imprisonment and reserving the question of official immunity for the jury when plaintiff's "allegations encompass a conscious abuse of official duty and power which could certainly fall within the scope of malice or bad faith."). Therefore, defendants are not entitled to summary judgment on this claim.

### 3. Liability of City of Clayton under State Law (Count VIII)

Plaintiff seeks to hold the City liable for the officers' violations of state law, and argues that City waived sovereign immunity for tort claims when it purchased liability insurance. "Although [Mo. Rev. Stat.] Section 537.610 provides for the waiver of sovereign immunity by operation of law upon the purchase of insurance by a municipality, the extent of that waiver is expressly dictated, and limited, by the terms of the insurance policy." Topps v. City of Country Club Hills, 272 S.W.3d 409, 415 (Mo. Ct. App. 2008). "[T]he plaintiff bears the burden of demonstrating the existence of the insurance *and* that it covered his particular claim." Parish v. Novus Equities Co., 231 S.W.3d 236,246 (Mo. Ct. App. 2007) (emphasis added).

Plaintiff cannot show that the City's insurance policy covered his claim. Instead, the City's insurance policy contains a disclaimer specifying that the procurement of the policy does not constitute a waiver of immunity.[3] Therefore, the City retains sovereign immunity against plaintiff's state law tort claims. See, e.g., Topps, 272 S.W.3d at 417-18 (holding that a disclaimer in the City's insurance policy preserved sovereign immunity); Parish, 231 S.W.3d at 246 ("a public entity retains its full sovereign immunity when the insurance policy contains a disclaimer stating that the entity's procurement of the policy was not meant to constitute a waiver of sovereign immunity"); State ex rel. Bd. of Trs. v. Russell, 843 S.W.2d 353, 360 (Mo. 1992) (*en banc*) (finding disclaimer of coverage prevented waiver of sovereign immunity). Accordingly, summary judgment will be granted in favor of defendant, the City of Clayton, on this count.

\* \* \*

---

[3] The disclaimer provides: "Notwithstanding any other provision, it is expressly agreed that our liability under this policy is limited to only those claims against insureds for which there is no governmental immunity pursuant to the laws of the State of Missouri."

For the reasons discussed above,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc. #21] is **granted** as to plaintiff's claims in Counts III, IV, V, and VIII only. Defendants' motion for summary judgment is **denied** in all other respects.

Judgment will be entered in favor of defendant City of Clayton at the conclusion of this case.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 18th day of November, 2013.